RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0311p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

LYNN A. ULMAN,

        *Plaintiff-Appellant,*

     *v.*

    No. 11-2304

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:10-cv-789—Robert Holmes Bell, District Judge.

Decided and Filed: September 7, 2012

Before: NORRIS, McKEAGUE, and KETHLEDGE, Circuit Judges.

———————————

## COUNSEL

**ON BRIEF:** Christopher D. Morris, Kalamazoo, Michigan, for Appellant. Kevin Agnew, SOCIAL SECURITY ADMINISTRATION, Chicago, Illinois, for Appellee.

———————————

## OPINION

———————————

ALAN E. NORRIS, Circuit Judge. Lynn Ulman appeals from the denial of her application for disability insurance benefits under the Social Security Act. While the administrative law judge ("ALJ") recognized that claimant suffered from physical limitations that prevented her from performing her past work (park ranger, home health care aid, and waitress), he found that she could perform other jobs (cashier, parking lot attendant, ticket taker) that existed in the national economy. The Appeals Council affirmed that decision. Claimant then filed an appeal in the district court. A magistrate judge issued a report recommending that the denial of disability benefits be affirmed; the district court adopted that recommendation.

1

On appeal, claimant focuses upon a single issue: Did the district court err when it concluded that a factual error made by the ALJ was harmless?

**I.**

Ms. Ulman filed her claim for benefits on March 7, 2006.  She alleged that her disability began on June 28, 2002.  As found by the ALJ, her insured status expired on December 31, 2003.  To be eligible for benefits, her disability must have begun on or before that date and continued until she filed her application for benefits.  42 U.S.C. § 423(a)(1); 20 C.F.R. § 404.315(a).

Claimant was 47 at the time her insured status expired.  She therefore fell into the category of "younger worker" for the purpose of determining whether age would affect her ability to adjust to other work.  20 C.F.R. § 404.1563(c).  As mentioned above, she had worked as a waitress, park ranger, and home health aide.

The first medical problem that claimant encountered occurred on December 3, 2001 when she fell backwards off a ladder.  She suffered bruising and left knee pain.  Although there was no sign of a fracture, imaging revealed "narrowing of the disc space at C6-C7 level with moderate marginal osteophyte formation about the vertebral endplates."  The emergency room physician also noted some arthritic change in her left shoulder.  She was discharged with instructions to "rest, apply ice to the sore area, continue use of ibuprofen, and/or Vicodin for pain."

This incident is significant to this appeal because the ALJ confused the date when the report was printed for the administrative record (2006) with the date of the incident (2001).  By the time that the ALJ reviewed the records, claimant had developed the other physical problems for which she sought disability benefits.  As noted in his decision, an ALJ must make a credibility assessment when evaluating "the intensity, persistence, and limiting effects of claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities."  With respect to pain, the ALJ must compare the intensity reported by the claimant to the objective medical evidence based "on a consideration of the entire case record."  *Id.*

The confusion concerning the date of the ladder incident led the ALJ to make the following adverse credibility determination with respect to her reports of disabling pain:

> [N]oted is the fact that although the claimant is seeking disability since June 2002 and indicating that she can do very little because of pain, records show she was actually climbing a ladder in 2006 wherein [sic] she fell about 7 to 8 feet backwards and had neck pain with pain down her left shoulder and arm all the way to the knee. *The fact that she was climbing a ladder is not consistent with being disabled prior to December 2003 and brings her credibility into question.*

(emphasis added). The question for us is whether this faulty assumption constitutes harmless error.

According to claimant's testimony, she injured herself in June 2002 when she fell into a hole at a campsite while working as a park ranger. She was treated in July for leg and lower back pain, which included x-rays that were unremarkable. However, due to continued back pain, she received prescriptions for Flexeril, a muscle relaxant, and Vicodin. An MRI of her lower spine on July 22 showed mild spinal stenosis and a mild central disc protrusion. Her physician, Dr. John Walstrum, did not believe that surgery would be necessary but nonetheless recommended a surgical evaluation.

On July 31, 2002, another physician, Dr. Daniel Mankoff, noted a "markedly antalgic" gait and limitation on her lumbar movement. In October of that year, she underwent a discography, which Dr. Mankoff interpreted as showing degenerative changes at L3-4, L4-5, and L5-S1. He recommended a minimally invasive back surgery referred to as intradiscal electrothermal therapy ("IDET"). The surgery was performed in January 2003.

In March 2003, Dr. Mankoff noted that claimant had undergone the back surgery and "she has been doing very well" although she had recently fallen, which resulted in increased back pain.

She returned to Dr. Mankoff on May 7, 2003. He noted that she was "improved" after the surgery but also recognized that she was having a significant problem with depression due to the pain. Although her back surgeon had recommended a return to

work, she told Dr. Mankoff that she did "not feel that in any way she is capable of returning to her job full-time." *Id.* He recommended continued pain medication, increased medication for her depression, and no work through June.

On May 28, she met with Dr. Mankoff again. They discussed her return to work. According to his notes, any such work "should involve no lifting over 10 pounds as well as a sit/stand option and no repetitive bending and twisting." *Id.* On August 6, 2003, he reiterated that he did not believe that claimant was able to return to work without restrictions and recommended a functional capacity evaluation. That fall he administered two caudal epidural injections to help claimant with back pain.

In his decision, the ALJ recounted this medical evidence. He also noted that claimant testified that she is in constant pain:

> On a 10-point scale of ascending pain, she said her pain averaged a 7 every day. She has been taking Vicodin for relief of pain since the first surgery. She has a hard time sleeping at night. She does no cooking, vacuuming, or grocery shopping. She added that her son and his wife did all the housework. Claimant said she also cannot work because she cannot sustain concentration for 40 hours and does not even read.

The ALJ concluded that claimant suffered from these severe impairments: degenerative disc disease, lumbar spine with chronic back pain, status-post surgery; degenerative changes of the cervical spine; and depression. However, he went on to find that "the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."

He determined that claimant's symptoms and limitations were "not credible to the extent alleged" and that she had the residual functional capacity to perform sedentary work. 20 C.F.R. §404.1567(a). In addition, the ALJ stated that claimant "requires the option to sit or stand at will every 30 to 60 minutes. She can engage in occasional bending, twisting, and turning and she cannot work around heights or moving machinery." In short, his restrictions tracked those suggested by Dr. Mankoff.

Relying upon the testimony of a vocational expert the ALJ concluded that a significant number of jobs existed in the national economy that would accommodate claimant's restrictions.

Based upon this analysis, claimant was denied disability benefits. She then appealed to the district court. The matter was referred to a magistrate judge for evaluation.

The primary issue before the magistrate judge—and the only one appealed to us—is whether the adverse credibility finding made by the ALJ requires remand because it was based in part upon a factual misreading of the record. The magistrate thought not:

> The ALJ's observation that disabled individuals generally do not climb ladders is misplaced, but the error is harmless. Substantial evidence is the applicable standard of review, not perfection. The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was not fully credible because it was inconsistent with the objective evidence and the opinions of her treating pain specialist, Daniel Mankoff, M.D. There is more than substantial evidence supporting the ALJ's credibility determination.

After noting that credibility determinations are typically the province of the ALJ, not reviewing courts, the magistrate judge recounted all of the medical evidence considered below before concluding that any error was "harmless because the objective evidence and the opinion of plaintiff's treating pain specialist, Dr. Mankoff, provide more than substantial evidence supporting the ALJ's credibility determination." The magistrate specifically cited a passage from the ALJ's decision to support his conclusion that "objective evidence did not support plaintiff's allegations of disabling pain." The district court's order adopting the recommendation reaches the same conclusion:

> Plaintiff's argument would be persuasive if the ALJ had based his credibility finding solely or primarily on the factual error identified by Plaintiff. However, as the Magistrate Judge details in the R&R, the ALJ analyzed at length other, objective evidence in support of his credibility determination.

**II.**

We review a district court's decision in social security cases *de novo*. *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005). In other words, this court directly reviews the Commissioner's findings and conclusions as if it were the first reviewing court. *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990). We must affirm the Commissioner's decision if it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see also* 42 U.S.C. § 405(g). Moreover, "[w]hen deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

Claimant takes the view that the magistrate judge (and the district court by extension) erred because he failed, as did the ALJ, to identify precisely what "objective medical evidence" other than the fall from the ladder called her credibility into question. She relies on a World War II era opinion involving the Securities and Exchange Commission, *S.E.C. v. Chenery Corp.*, 318 U.S. 80 (1942), for the proposition that "federal agency action must be based upon what it did, not by what it might have done." This reasoning misses the mark. First, the Commissioner is not attempting to offer a post hoc-justification of agency action by invoking the harmless error argument. Rather, the Commissioner is simply saying that the ALJ cited "substantial evidence" to support his conclusion regarding claimant's credibility even if we discount his reliance upon the fall from the ladder. Unlike the unpublished decision cited by claimant, *Berryhill v. Shalala*, No. 92-5867, 1993 WL 361792 (6th Cir. Sept. 16, 1993), this appeal does not involve a misapplication of a legal principle by the ALJ; rather, he simply erred in a factual finding. As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: "If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass*, 499 F.3d at 509.

An opinion from the Ninth Circuit Court of Appeals involving an ALJ who found a claimant less than credible based in part upon invalid reasons is instructive. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008). In that case, the ALJ relied upon two invalid reasons in reaching an adverse credibility determination. The Ninth Circuit reviewed for harmless error and noted, "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal." *Id.* (quotation marks omitted and punctuation altered). While we have not explicitly adopted a harmless error analysis to credibility determinations, one of our leading disability benefits cases, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004), tacitly uses that standard when the ALJ made an error of law by not following the Commissioner's guidelines and regulations concerning the weight to be given to treating physicians. *See also Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 336 (6th Cir. 2007) (misreading of a psychiatric exhibit harmless because the ALJ credited claimant with all other mental limitations). We now make explicit what we have previously adopted by implication: harmless error analysis applies to credibility determinations in the social security disability context.

With the exception of Ms. Ulman's fall from the ladder, the ALJ's decision carefully parses all of the medical records and accords them fair weight. And, those records support a finding of no disability. Dr. Mankoff stated that claimant could return to work with the very restrictions adopted by the ALJ in his hypothetical to the vocational expert. Given our highly deferential standard of review, we must affirm the denial of benefits.

**III.**

The petition for review is **denied.**