**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0829n.06

**No. 14-4154**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Dec 23, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TIFFANI STEPHENSON, | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| COMMISSIONER OF | ) | OHIO |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant - Appellant. | ) | OPINION |

Before: BATCHELDER and STRANCH, Circuit Judges; HOOD, District Judge.[*]

HOOD, District Judge. Appellant Tiffani Stephenson ("Stephenson") appeals the judgment of the district court affirming the denial of her applications for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income ("SSI") by the Commissioner of Social Security ("Commissioner"). Stephenson raises two arguments on appeal: (1) the Administrative Law Judge's ("ALJ's") decision is unsupported by substantial evidence when the standard treatment for severe lymphedema was not included in

---

[*] The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

the residual functional capacity assessment, and (2) the ALJ's decision is unsupported by substantial evidence when insufficient evidentiary weight was given to the opinion of Stephenson's treating physician. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Stephenson applied for SSDI and SSI on September 1, 2009. Stephenson claimed she has been disabled since June 13, 2009 due to a history of malignant melanoma on her left leg which resulted in severe damage to the lymph nodes causing her leg to swell. Her claims were denied and her request for reconsideration was also denied. An administrative hearing before an ALJ was held on November 9, 2011. The ALJ determined Stephenson was not disabled. The Appeals Counsel denied Stephenson's request for review. Stephenson thereafter filed a Complaint against the Commissioner of Social Security before the district court on May 30, 2013. The district court entered a judgment and order on September 23, 2014 adopting the magistrate judge's report and recommendation affirming the Commissioner's denial of Stephenson's applications for SSDI and SSI. This appeal followed.

## II. FACTS/RECORD

In 1999, a malignant melanoma was removed from Stephenson's left calf and a lymphadenectomy was performed. There was no recurrence of the disease in

the following ten years. On June 17, 2009, Stephenson visited her primary care physician, James Byatt, M.D., complaining of a painful swollen left leg. Dr. Byatt ordered a venous scan of the left lower extremity, which revealed no evidence of deep vein thrombosis. Stephenson was referred by Dr. Byatt to Andrew J. Seiwert, M.D., a vascular surgeon at Fostoria Vascular Clinic, for further evaluation and treatment.

Stephenson saw Dr. Seiwert on July 6, 2009, who diagnosed her with lymphedema on her left leg, "likely due to lymphatic obstruction secondary to melanoma excision and lymphadenectomy." (R. 12 at PgID 345). Dr. Seiwert noted that Stephenson's legs were normal, except for a trace of edema in her left calf, ankle and foot regions. Dr. Seiwert also noted that Stephenson's weight gain and increased skin perfusion associated with the warm summer months exacerbated the condition. Dr. Seiwert referred Stephenson to the Lymphedema Clinic for further evaluation.

On October 19, 2009, Todd Russell, M.D. of the Lymphedema Clinic noted that the swelling in Stephenson's left leg was under control since it was half the size it had been prior to the Clinic's treatment, but Stephenson continued to complain of pain in her left leg. Dr. Russell noted that this was unusual since in most people affected by lymphedema, the swelling was relatively painless. Dr. Russell encouraged Stephenson to continue with compression therapy and

recommended further testing to determine the source of the pain. On November 23, 2009, Stephenson underwent a venous duplex bilateral examination. The result of the venous Doppler study was unremarkable, with no evidence of deep vein thrombosis, superficial venous thrombosis or venous valvular insufficiency in either leg.

A State of Ohio agency consultant, Leigh Thomas, M.D., assessed Stephenson's residual functional capacity on November 25, 2009. Dr. Thomas found that Stephenson could lift twenty pounds occasionally and ten pounds frequently. Dr. Thomas noted that Stephenson could sit six hours in an eight-hour work day and that standing/walking was limited to two hours. Dr. Thomas indicated that Stephenson's symptoms are not disproportionate to her medically determinable impairment, and Dr. Thomas found Stephenson credible. Edmond Gardner, M.D., a state agency consultant, agreed with Dr. Thomas' assessment after reviewing Stephenson's file on April 22, 2010.

On December 7, 2009, Dr. Seiwert reported that Stephenson had a somewhat favorable response to treatment at the Lymphedema Clinic, including use of compression stockings. Dr. Seiwert noted, however, that her lower left leg was considerably more swollen than the right leg. Dr. Seiwert found no signs of ulceration at the calf or prominent varices over the groin and that Stephenson's thigh had nearly normal tissue turgor. Dr. Seiwert encouraged Stephenson to be

more active and to use chaps to keep her stockings from slipping down her leg. Dr. Seiwert indicated that May-Thurner syndrome remained possible.

On January 7, 2010, Stephenson complained to Dr. Byatt of bilateral neuropathic symptoms, but denied back pain. Dr. Byatt noted this as classic parasthesias with tingling and shooting vague numbness associated with bilateral pain. Dr. Byatt found clinical evidence for an entrapment neuropathy. Dr. Byatt prescribed Sinernet for symptoms of restless leg syndrome and Darvocet-N for pain and to reduce Stephenson's upset stomach caused by taking ibuprofen. Dr. Byatt noted that Stephenson's weight had steadily increased, which Stephenson claimed was because of drinking regular soda and being laid off from her job. Dr. Byatt ordered an MRI of the lumbar spine and lab work performed on January 13, 2010.

On February 8, 2010, Dr. Byatt noted negative results from the MRI and lab work, noting that Stephenson was still experiencing chronic lymphedema of her left leg and bilateral parasthesias. Dr. Byatt prescribed Lyrica to Stephenson.

On April 22, 2010, Dr. Byatt filled out a Basic Medical Form for the Ohio Department of Job and Family Services where he indicated that Stephenson suffered from persistent severe lymphedema of her left leg with chronic swelling. Dr. Byatt checked the boxes regarding Stephenson's functional limitations

indicating Stephenson could not work for twelve months or more because she visited the Lymphedema Clinic three times a week.

On June 7, 2010, Stephenson reported to Dr. Seiwert that her compression wraps were keeping her symptoms from becoming too prominent and that she had drainage from the scars located near her melanoma excision on her left calf. Dr. Seiwert found that Stephenson continued to have prominent venous structures, with a possibility of central venous hypertension. He ordered a venography to determine if Stephenson had obstructive venous pathology due to May-Thurner physiology. The venography on June 16, 2010 revealed a trace deep femoral reflux on the left side, with no signs of iliocaval venous obstruction.

Stephenson saw Dr. Byatt on September 24, 2010 reporting that she used Darvocet for her lymphedema pain and that she hoped to work again. Dr. Byatt refilled the Darvocet prescription. On March 2, 2011, Stephenson reported to Dr. Byatt that Lyrica was helping with her leg neuropathy. Stephenson indicated she was taking fifteen online classes to pursue a Bachelor's degree. Dr. Byatt noted that Stephenson looked wonderful.

Dr. Byatt filled out disability forms for Stephenson on April 4, 2011. He indicated that Stephenson had lymphedema on her left leg with secondary neuropathy since her survey to remove the melanoma in 1999. Dr. Byatt reported that Stephenson has symptoms of chronic painful swelling in her left leg with

burning parasthesias on the left leg with hyperparasthesias. Dr. Byatt stated that Stephenson was unable to work, because she could not stand for more than a few minutes. Dr. Byatt indicated that Stephenson could sit for a half hour at a time, could stand for a half hour total in an eight-hour day, could occasionally lift fifteen pounds, would require unscheduled breaks every half hour, and would be absent five days of the month.

At the hearing before the ALJ, a vocational expert ("VE") testified. The VE testified that Stephenson's past work experience ranged from light to medium exertional levels and unskilled to skilled positions. The ALJ posed a hypothetical question to the ALJ where the individual with the same experience as Stephenson, who is able to lift no more than fifteen pounds, standing and walking at no greater than the sedentary exertional level, but not required to stand or walk for more than a few minutes at a time, with the option of alternating between sitting and standing, would be precluded from using her left lower extremity for pushing, pulling or operation of foot controls, and also precluded from climbing, kneeling, crouching or crawling, with occasional stooping, avoiding exposure to extreme heat. The VE responded that the individual would not be able to perform Stephenson's past jobs, but identified sedentary jobs which such an individual could perform. The ALJ added a limitation that the individual would be required to elevate her left lower extremity on a regular basis. The VE responded that there would be no

occupations available for such an individual. The VE testified that for semi-skilled jobs, no more than three absences per month would be tolerated, and for unskilled jobs, no more than one or two absences per month would be tolerated.

The ALJ found that Stephenson suffered from severe lymphedema of her left leg. The ALJ indicated that this impairment did not meet or medically equal a listed impairment. The ALJ found Stephenson was not credible because of Stephenson's contradictory statements regarding medication side effects, and her daily living activities, and because the medical evidence did not support Stephenson's claims of pain. The ALJ noted the lack of objective evidence regarding Stephenson's claim of headaches and the need to elevate her leg throughout the day.

## III. ANALYSIS

### A. Standard of Review

We review a district court's decision on a social security case de novo. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Our review is limited to whether the Commissioner's decision "is supported by substantial evidence and was made pursuant to proper legal standards." *Id*. Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citations

omitted). "If the Commissioner's decision is based upon substantial evidence, we must affirm, even if substantial evidence exists in the record supporting a different conclusion." *Ealy v. Comm'r Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citation omitted).

**B.    Substantial Evidence**

   **1.    Standard Treatment**

Stephenson's first issue on appeal is that substantial evidence does not support the ALJ's excluding from his residual functional capacity ("RFC") assessment of Stephenson's need to elevate her left leg throughout the day, the standard treatment for lymphedema. The Commissioner responds that substantial evidence does support the ALJ's RFC assessment. The ALJ determines a claimant's RFC based on evidence such as medical records, doctor's opinions, and the claimant's descriptions of her symptoms. 20 C.F.R. § 404.1529(a). The ALJ considers the "extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

Objective medical evidence supports the conclusion that Stephenson did not need to elevate her left leg throughout the day. Medical exams showed no evidence that Stephenson had deep vein thrombosis or valvular insufficiency. (R. 12 at PageID 337, 343, 331). Doctor's reports stated that treatment and

compression stocking helped control her symptoms. (*Id.* at 332, 331, 360, 373). Additionally, no doctor instructed Stephenson to regularly elevate her leg.

Stephenson argues that objective medical evidence demonstrates her need to elevate her leg. She asserts that the websites Mayoclinic.org and WebMD declare elevation of the limb above the heart to be the standard treatment for lymphedema. Neither website actually states that elevation is the standard treatment for lymphedema, however. Mayoclinic suggests elevation to prevent lymphedema after surgery, and WebMD states elevation "can help ease the drainage." Stephenson has not pointed to any evidence in the record that notes the requirement to elevate her leg throughout the day.

We agree with the district court that substantial evidence supports the ALJ's RFC assessment.

### 2. Credibility

Stephenson argues that the ALJ erred in analyzing her credibility. The Commissioner responds that the ALJ's credibility finding was supported by substantial evidence. "As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess," and reversal is not "warranted even if substantial evidence would support an opposite conclusion." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (citation

omitted). A harmless error analysis applies to an ALJ's credibility determination in a social security case. *Id.*

The ALJ cited several factors that damaged Stephenson's credibility as to the disabling severity of her impairments. The ALJ found that, contrary to her testimony, Stephenson noted in her documentary submissions to the SSA that there were no adverse side effects to her prescribed medications. The ALJ further found that the medical evidence did not substantiate Stephenson's testimony of severe headaches or the need to elevate her leg throughout the day. The ALJ found that Stephenson engaged in varied activities including laundry, dishwashing, periodic attendance at her children's sporting events and her own college coursework. The ALJ noted that Stephenson discontinued her online classes, where she was required to sit three hours per day, because of lack of internet access. Stephenson did not indicate that she discontinued her classes because of her impairments.

The ALJ's credibility finding was supported by substantial evidence, or, in this instance as to the elevated leg requirement, the lack of evidence. No medical personnel, including Stephenson's treating physician, required Stephenson to elevate her leg throughout the day. There is no contrary evidence to support Stephenson's claim that she was required to elevate her leg throughout the day. It was proper for the ALJ to consider Stephenson's testimony in light of the documentary submissions and the medical record.

Because the ALJ's credibility finding is supported by substantial evidence, we are not to second-guess such a finding.

## C.    The Treating Physician Rule

Stephenson's second issue on appeal is that the ALJ failed to give her treating physician's opinion due weight.  The Commissioner responds that the ALJ applied the applicable regulations when weighing the treating physician's opinion.

The ALJ is guided by 40 C.F.R. § 404.1527 in evaluating opinion evidence, with the ultimate issue of disability reserved to the Commissioner.  40 C.F.R. § 404.1527(d).  "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 40 C.F.R. § 404.1527(c)(2)(ii).  "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  40 C.F.R. § 404.1527(c)(2); see also *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion.  These reasons must be supported by the evidence in the case record." *Id.* (citations omitted).

The ALJ gave Stephenson's treating physician, Dr. Byatt, significant weight, but for two exceptions. The ALJ noted that in one report, Dr. Byatt stated that Stephenson could stand and walk for a total of one-half hour in an eight hour workday, which the ALJ found was inconsistent with Stephenson's testimony that she was able to stand continuously for up to one hour. The other inconsistency found by the ALJ was that Dr. Byatt indicated Stephenson would require unscheduled breaks every one-half hour and would miss five days of work monthly. The ALJ noted that the record indicated that medication and compression wraps were effective in controlling Stephenson's symptoms and that Stephenson was able to maintain a heavy online college course load which required her to sit three hours daily. The ALJ found Dr. Byatt's opinion on these two issues were not credible.

We affirm the district court's conclusion that the magistrate judge found the ALJ provided good reasons for affording Dr. Byatt's opinion limited weight. The ALJ referred to Stephenson's own testimony which contradicted Dr. Byatt's opinion as to how long Stephenson was able to stand continuously. The ALJ also noted that Dr. Byatt's opinion that Stephenson required unscheduled breaks every one-half hour and would miss five days per month was not supported by the medical record because the record indicated the medication and compression wraps effectively controlled Stephenson's symptoms. The ALJ properly supported the

discounted weight given to Dr. Byatt's findings on the two issues noted by referring to the inconsistencies in the case record.

## IV. CONCLUSION

For the reasons set forth above, the judgment of the district court is **AFFIRMED.**