NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0157n.06

**No. 17-1822**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| KELLI MAY NETTLEMAN, | ) | **FILED** |
| | | Mar 27, 2018 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | | UNITED STATES DISTRICT |
| COMMISSIONER OF SOCIAL SECURITY, | ) | COURT FOR THE WESTERN |
| | | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |

**BEFORE:** **BOGGS, CLAY, and KETHLEDGE, Circuit Judges.**

**BOGGS, Circuit Judge**. Kelli Nettleman appeals the district court's order affirming the denial of her application for Supplemental Security Income and Disability Insurance Benefits. She contends that the Administrative Law Judge ("ALJ") erred in determining that her pulmonary condition did not meet the requirements of a listed impairment under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. § 405(g). We affirm the denial of Supplemental Security Income and Disability Insurance Benefits.

I

Kelli Nettleman suffers from acute chronic obstructive pulmonary disease (COPD), acute respiratory failure, diabetes, obesity, carpal tunnel syndrome, and an anxiety disorder. Nettleman was born in 1973 and married in 1999. She lives in rural Michigan with her husband and has no children. She completed high school in May 2006 and thereafter worked caring for the elderly in various capacities, including as a rehab tech, a "meaning pursuit" coordinator at an

assisted-living facility, a home health aide, and a care friend at an assisted-living facility. Nettleman smoked for 24 years, finally stopping at age 40, in January 2014, after she suffered an acute pulmonary crisis requiring hospitalization for acute exacerbation of COPD with acute respiratory failure. She lost her job because of her respiratory limitations at work.

## II

In February 2014, Nettleman filed for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Her applications were denied, and she requested a hearing before an ALJ. On May 13, 2015, Nettleman and a vocational expert testified before the ALJ. The ALJ determined that Nettleman was not disabled and thus was not entitled to DIB or SSI benefits. In April 2016, the Appeals Council denied Nettleman's request to review the ALJ's decision, which made it the Commissioner's final decision, and subject to judicial review. Nettleman appealed. Both parties consented to a magistrate judge conducting all proceedings of the case. 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. The magistrate judge affirmed the ALJ's decision.

This court reviews de novo a district court's decision regarding Social Security disability benefits. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). In so doing, this court directly reviews the Commissioner's findings and conclusions as if it were the first reviewing court and must affirm the Commissioner's decision if it is supported by substantial evidence and applies the correct legal standard. *See* 42 U.S.C. § 405(g); *Ulman*, 693 F.3d at 713; *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir. 1990). The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). Substantial evidence is more than a scintilla, but less than a

preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

III

To establish a disability under the Act, the claimant bears the burden of establishing the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Social Security regulations set forth a five-step sequential evaluation process for determining if an individual is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520 (a-f), 416.920 (a-f). The ALJ can make a dispositive finding at any stage of the review, ending the inquiry without going through all five steps. 20 C.F.R. §§ 404.1520(a), 416.920(a). The five-step sequential evaluation asks the following questions:

Step one: is the individual engaged in substantial gainful activity (i.e., working)? If the individual is not working, the ALJ moves on to step two. *Ibid*. There is no dispute that Nettleman was not working.

Step two: is the individual's condition medically severe? The individual must have a medically determinable physical or mental impairment that is severe as set forth in the regulatory scheme and meets the duration requirement (expected to last 12 months or result in death). *Ibid*. The ALJ held that Nettleman had the severe impairments of carpal tunnel syndrome, 20 C.F.R. § 404.1520(c), and chronic obstructive pulmonary disease, 20 C.F.R. § 416.920(c). The ALJ found that her diabetes and obesity were non-severe, as was her anxiety disorder. There is no dispute on appeal that Nettleman's COPD and acute respiratory failure were severe under step two.

Step three: does the individual's medical condition meet or equal the severity of a listing of medical criteria that is set forth in The Listing of Impairments, 20 C.F.R., Part 404, Subpart P, Appendix 1 ("the Appendix"), 20 C.F.R. §§ 404.1520 (a)(4)(iii), 416.920(a)(4)(iii). The ALJ found that Nettleman did not meet the listing level for COPD. Nettleman argues that substantial evidence did not support the ALJ's determination that her pulmonary conditions did not meet the level of a listed impairment.

The Act's listing requirements for respiratory disorders are found in § 3.00 of the Appendix. The regulations provide that medical evidence is required to document and assess the severity of a respiratory disorder based on the results of various tests, including pulmonary function tests. Appendix § 3.00(E). Pulmonary function tests include spirometry, which measures ventilation of the lungs. *Ibid.*

Spirometry measures how well the patient moves air into and out of her lungs. The regulations require "at least three satisfactory forced expiratory maneuvers" during testing. Appendix § 3.00(E). In a forced expiratory maneuver, the patient inhales as much as possible and then exhales as quickly and forcefully as possible. The test records the "one-second forced expiratory volume" (FEVl), the volume of air exhaled in the first second. *Ibid.* The ALJ uses the highest of the three FEVl results to evaluate an applicant's respiratory disorder. *Ibid.* The regulations specifically require that spirometry results include at least three FEVl readings in each maneuver or test.

To qualify for disability caused by a chronic respiratory disorder, the results of an individual's spirometry tests must meet the criteria set out in a table in § 3.02A. The listings standard for FEV1 numbers is related to an individual's height without shoes. Appendix

§ 3.02(A). Nettleman's height without shoes is 61 inches so, per the table, her FEV1 result must be equal to or less than 1.15 liters to qualify for disability. Appendix § 3.02(A), Table 1.

The ALJ found that Nettleman failed to provide the requisite medical evidence needed to establish a respiratory disability under § 3.02A. Nettleman's medical record included the following pulmonary function test results:

| | | | |
|---|---|---|---|
| 04/07/14 | FEV1 | 1.49, 1.75, 1.63, 1.66 liters | [pulmonary testing by state agency Dr. Saadat Abbasi, only test to record required 3 results] |
| 05/15/14 | FEV1 | 1.92 liters | [Dr. Potempa, pulmonologist. Spirometry flow sheet notes only one FEV1 value] |
| 08/07/14 | FEV1 | 1.21 liters | [Dr. Potempa, pulmonologist. Spirometry flow sheet notes only one FEV1 value] |
| 09/10/14 | FEV1 | 1.34 liters | [Dr. Potempa, pulmonologist. Spirometry flow sheet notes only one FEV1 value] |
| 12/11/14 | FEV1 | 0.92 liters | [Dr. Potempa, pulmonologist. Spirometry flow sheet notes only one FEV1 value] |
| 04/14/15 | FEV1 | 1.12 liters | [included only in record at Appeals Council] |

Only the FEV1 test in April 2014 has the requisite three forced expiratory readings. The highest value in that test was 1.75 liters, well above the 1.15 liter standard for disability. The other four FEV1 tests submitted by Nettleman at best noted only a single forced expiratory reading. Only the December 2014 test result of .92 liters fell below the 1.15 liter requirement. An additional April 2015 test produced an FEV1 value of 1.12 liters, but it was not included in the record before the ALJ, although it was considered by the Appeals Council and found insufficient to warrant review of the ALJ's decision.

Nettleman argues that her FEV1 numbers are "close enough." She points to the fact that she has to use an oxygen tank 24 hours a day and argues that there is an "intuitive connection" between being "stuck on oxygen" and a respiratory listing. But, the Act and its regulations

nowhere support the idea that disability benefits are automatically awarded if an individual uses supplemental oxygen, even continuously. Claimants must still provide medical evidence to establish the severity of their medical disorder. Appendix § 3.02(A). Nettleman failed to do so.

Since the ALJ found that the listing standard was not met, the ALJ then went on to determine Nettleman's residual functional capacity ("RFC") to use in steps four and five. 20 C.F.R. §§ 404.1520 (a)(4), 416.920(a)(4). As related by the district court, the ALJ found that Nettleman could perform light work as defined in 20 C.F.R. 404.1567 (b) and 416.967(b) with the following limitations:

> (1) she can carry 10 pounds frequently and 20 pounds only occasionally; (2) she can only occasionally use hand controls; (3) she can frequently perform handling and fingering activities; (4) she can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; (5) she can never climb ladders or scaffolds; (6) she must avoid concentrated exposure to weather, humidity, wetness, and temperature extremes; and (7) she must avoid even moderate exposure to dust, odors, fumes, and other pulmonary irritants.

District Court Opinion at R.13 at 5, ID #497.

Applying this RFC, the question under step four is whether an individual can do any past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ found that Nettleman could not do her previous work. Her inability to do her previous work is not disputed on appeal. But, Nettleman does challenge the RFC light-work finding as it is applied at step five.

The final question at step five is whether, applying the RFC as found by the ALJ, the individual can perform any other work that exists in significant numbers in the national economy. *Ibid*. At step five, the burden shifts to the Commissioner to show that such work exists and that the individual can make an adjustment and perform that work, taking into account the limiting factors of an individual's impairment, age, education, and work experience based on

a vocational expert's vocational profile of that individual. 20 C.F.R. §§ 404.1512(g), 404.1560(c), 416.912(g), and 416.960(c).

At the ALJ hearing, the vocational expert testified that, considering Nettleman's age (40), education (high school), work experience (health aide), and RFC (light work with restrictions), jobs did exist in the national economy that Nettleman could perform such as an office helper, information clerk, and document preparer. The ALJ held that Nettleman was not disabled, as she could make a successful adjustment to other work. This court finds that Nettleman has presented no evidence that suggests the ALJ's conclusion is not supported by substantial evidence in the record.

The court does note that in September 2014, Nettleman's pulmonologist diagnosed her with Alpha1-Antitrypsis Deficiency (AATD), a genetic condition with no cure that raises the risk of lung disease. Nettleman's AATD was not addressed by the ALJ. While this could be significant in the future, nowhere on the record is there any evidence that her satisfactory pulmonary function tests were worsening or going below 1.15 liters as a result of AATD. In fact, Nettleman could have requested a remand from the district court for further proceedings to consider new evidence, but no request was made and no other new evidence was submitted. Based on this record, the ALJ met the substantial-evidence test. If Nettleman's condition were to worsen, she can bring a new cause of action and provide new pulmonary-function evidence to prove that she meets the listing guidelines as of the date of her new application and thus receive benefits for a respiratory disorder from that time forward.

We AFFIRM.

**CLAY, Circuit Judge, dissenting**. This matter should be remanded for further proceedings. The record below suggests that the ALJ failed to consider evidence that Nettleman meets Listing 3.02A. Under this listing, Nettleman qualifies as disabled if her $FEV_1$ value falls below 1.15L.[1] On December 11, 2014, Nettleman's $FEV_1$ value was 0.92L, which is well below 1.15L. Rather than remanding for the ALJ to consider this dispositive evidence, the majority rejects the evidence out of hand. In doing so, the majority speculates that the doctor or nurse who performed Nettleman's examination was unfamiliar with basic medical practices. Because I find it more likely that the majority misunderstands the pertinent medical practices than that the doctor or nurse acted deficiently, I respectfully dissent.

The type of examination that produces a $FEV_1$ value is called spirometry. Social Security regulations describe spirometry as a test that "measures how well you move air into and out of your lungs" and that "involves at least three forced expiratory maneuvers during the same test session." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00(E)(1). Similarly, the Occupational Safety and Health Administration's manual on performing spirometry examinations explains that "[a] 'valid' test includes at least three technically 'acceptable' maneuvers." *Spirometry Testing in Occupational Health Programs*, OSHA 3637-03 2013, at 18. The American Thoracic Society (ATS), which publishes practice guidelines that are widely followed by pulmonologists around the world, also describes an "ideal test session" as including "at least three acceptable maneuvers." *Recommendations for a Standardized Pulmonary Function Report*, 196 Am. J. Respir. Crit. Care Med., 1463, 1469 (2017). After performing these multiple maneuvers, the patient's highest $FEV_1$ score becomes her operative $FEV_1$ value. *See id.* Some models of spirometers (the tools used to perform spirometry examinations) advertise that they require the

---

[1] $FEV_1$ is a measurement of pulmonary function based on the volume of air an individual exhales in the first second of a forced expiratory maneuver. *See* § 3.00(C)(1), (E)(1).

patient to perform at least three maneuvers to "meet[] ATS standards" and then automatically store and display only the highest $FEV_1$ score. *See* NDD EasyOne™ Plus Diagnostic Spirometry System, Eray Medical Supplies, Inc., available at http://www.eraymedical.com/ndd-easyone-plus-diagnostic-spirometer-2001-2np.html (last accessed March 7, 2018).

On December 11, 2014, Nettleman underwent a spirometry examination at the Battle Creek Lung Center. (R. 7-7 at PageID #365.) That clinic now calls itself the Lung Center and Sleep Clinic, and it brands its website with the logo of the American Thoracic Society. *See* http://www.lungcenterandsleepclinic.com. Nettleman's $FEV_1$ value from this examination was 0.92L. (R. 7-7 at PageID #365.) The medical evidence in the record does not specifically note the number of maneuvers performed during this examination. However, the ALJ's review of medical evidence submitted to the record is "inquisitorial rather than adversarial," and "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000); *see also* 20 C.F.R. § 404.900(b) ("In making a determination or decision in your case, we conduct the administrative review process in an informal, non-adversarial manner. . . . [W]e will consider at each step of the review process any information you present as well as all the information in our records."). This Court cannot affirm the ALJ's determination if the ALJ's findings are not supported by substantial evidence. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The ALJ in this case concluded that Nettleman "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 7-2 at PageID # 62.) But this statement is not accompanied by any discussion of Nettleman's $FEV_1$ value from her December 11, 2014, examination—a value that easily meets the severity of Listing 3.02A. Because the

ALJ failed to consider this dispositive test result, I cannot conclude that the ALJ's ruling is supported by substantial evidence. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) ("[T]he ALJ offered nothing to support her conclusion at this step and because she did not, 'we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not.'") (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). If the ALJ needed any additional medical evidence to confirm that the December 11, 2014, examination comported with standard medical practices or agency regulations, the ALJ was required to conduct an investigation before issuing a ruling. *See Sims*, 530 U.S. at 110–11. This case therefore should be remanded for further consideration by the ALJ.

Despite the ALJ's clear failure to consider the December 11, 2014, examination results, the majority affirms the ALJ's ruling as supported by substantial evidence. To reach this result, the majority determines that the examination did not have "the requisite three forced expiratory readings." This determination requires the majority to assume that the doctor or nurse who performed the examination at a clinic called "The Lung Center" was unfamiliar with standard practices for a basic lung examination. It also requires the majority to assume that "The Lung Center" did not have modern equipment that would automatically prompt the user to perform at least three maneuvers. Rather than making these extreme assumptions to affirm the ALJ's ruling on a basis that the ALJ himself did not even suggest, I would remand the case for further evaluation by the ALJ.