NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0528n.06

Case No. 25-5425

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Nov 14, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| THERESA A. DEMARIO, | ) | |
|     Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | KENTUCKY |
| COMMISSIONER OF SOCIAL SECURITY, | ) | OPINION |
|     Defendant-Appellee. | ) | |
| | ) | |

Before: MOORE, THAPAR, and RITZ, Circuit Judges.

THAPAR, Circuit Judge. Theresa DeMario applied for social-security disability benefits. But an administrative law judge (ALJ) concluded that she didn't meet the Social Security Act's strict requirements for disability because she could still hold many jobs requiring only light work. Because substantial evidence supports the ALJ's conclusions, we affirm.

I.

Theresa DeMario previously worked as a freelance writer, manager of a volunteer program for a local government agency, and laundromat attendant. But DeMario claimed that she became disabled at age 40 due to a combination of health issues.

First, she struggled with obesity, but her doctors didn't recommend any restrictions on her work. Rather, they encouraged her to "continue maximum effort for active daily living activities to burn some calories for weight loss." R. 9, Pg. ID 830.

Second, DeMario had knee pain and moderate osteoarthritis, which is a joint disease. But she walked with an "active gait with[o]ut any help." *Id.* at 829. And her doctors pursued only a conservative treatment plan, encouraging her to "continue maximum active daily living activities as much as possible" and recommending that she use topical gels for pain. *Id.* at 636.

Third, DeMario suffered from neuropathy, a type of nerve damage that affected her lower legs and feet. This condition caused her to feel numbness, tingling, and burning and to sometimes have balance problems. In response, her doctors prescribed a cream and medication, which provided "fairly good benefit," although that treatment didn't always work and produced some side effects. *Id.* at 648.

Fourth, DeMario experienced tingling and numbness in her fingers, which her doctors diagnosed as a moderate form of carpal tunnel syndrome. However, DeMario still had full strength and full range of motion in her hands, and injection treatments provided her with "good relief." *Id.* at 1568.

Finally, DeMario suffered from headaches and migraines for most of her life. Her symptoms improved after she received Botox injections, but she hadn't scheduled any follow-up appointments because she was busy dealing with family issues.

Despite her health problems, DeMario could still perform some daily tasks like running errands, attending appointments, helping feed and take care of her pets, washing her hair, preparing basic meals, washing dishes, folding laundry, and cleaning the bathroom. In her own words, "I can do most things. I just pay for it sometimes." *Id.* at 77. DeMario further explained that she needs to take breaks when carrying out more strenuous tasks. She also testified that she walks slowly, often relies on others to drive, sometimes loses her balance, and drops things. Because of these limitations, DeMario filed a claim for social-security benefits.

After holding a hearing at which DeMario testified, an ALJ ruled that DeMario wasn't disabled and thus wasn't entitled to social-security benefits. The ALJ acknowledged that the nerve damage in DeMario's legs, her carpal tunnel syndrome, and her headaches were all severe impairments. But the ALJ determined that DeMario's obesity and knee pain weren't severe. Considering all her severe and non-severe impairments, the ALJ found that DeMario could perform light work, subject to certain limitations. And because she could hold jobs like a cashier, office helper, and counter clerk despite those limitations, the ALJ concluded that DeMario wasn't disabled under the Social Security Act.

DeMario challenged the ALJ's ruling in the district court. The district court affirmed the ALJ's decision, and DeMario timely appealed.

II.

In social-security appeals, we review the district court's decision de novo. *Hamilton v. Comm'r of Soc. Sec.*, 98 F.4th 800, 803 (6th Cir. 2024) (per curiam). However, the agency's factual findings are "conclusive" when supported by "substantial evidence." 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). In other words, we must affirm the agency's conclusions "[u]nless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (quotation omitted). That threshold "is not high" and simply requires "more than a mere scintilla" of evidence. *Id.* (quotation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go

either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quotation omitted).

Substantial evidence supports the ALJ's conclusion that DeMario wasn't disabled. DeMario admits she "can do most things." R. 9, Pg. ID 77. For instance, she can run errands, feed and take care of her pets, wash her hair, prepare meals, wash dishes, fold laundry, and clean. This indicates—as the ALJ determined—that DeMario remains able to work. And even though DeMario points to various medical impairments, the ALJ accounted for those impairments in concluding that she could perform only a limited range of light work. Specifically, the ALJ identified restrictions on the amount of weight she can lift and carry, the length of time she can sit and stand, and the environmental conditions she can be exposed to at work. DeMario didn't present medical records showing her capabilities were more limited, and her own medical providers didn't even recommend any work-related restrictions. On this record, the ALJ properly determined that DeMario can perform jobs that exist in the national economy, even with her limitations.

DeMario's criticisms of the ALJ's analysis are unavailing. First, she argues that the ALJ didn't account for the combined effect of her obesity and knee problems in determining her capacity to work. But the record indicates otherwise. The ALJ repeatedly explained that her decision was based on "careful consideration of the entire record," including "all symptoms" DeMario reported. *Id.* at 47. And the ALJ specifically referenced DeMario's chronic pain and her testimony that she is "unable to stand or walk for extended periods." *Id.* While DeMario faults the ALJ for not making explicit findings related to her obesity and knee issues, an "ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party." *Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999)

(quotation omitted). Indeed, the ALJ's statements that she had considered the full record and all DeMario's symptoms indicate that the ALJ had accounted for the combined effect of DeMario's impairments. *Emard*, 953 F.3d at 851.

Next, DeMario asserts the ALJ should've discussed a blood test that showed elevated levels of inflammation in her body. But DeMario doesn't explain how that blood test undermines the ALJ's conclusions about her capacity to work. After all, that blood test didn't identify the cause of the inflammation, its severity, or how it impacted her ability to work. And once again, the ALJ didn't need to address every piece of evidence in the record. *Loral Def.*, 200 F.3d at 453. So, the ALJ didn't err by leaving the blood test out of her analysis.

DeMario also contends that the ALJ failed to consider her headaches and evidence that Botox injections didn't always help with her symptoms. But "[t]he existence of potentially conflicting evidence is immaterial so long as substantial evidence supports an ALJ's determination." *Preston v. Comm'r of Soc. Sec.*, No. 22-4026, 2023 WL 4080104, at *3 (6th Cir. June 20, 2023) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)). And here, substantial evidence supports the ALJ's conclusion that DeMario could hold a job despite her headaches. As the ALJ noted, DeMario suffered from headaches since she was a teenager but still managed to work as a freelance writer and manager of a volunteer program. Likewise, medical records revealed that Botox injections were indeed effective in treating her headaches. At the end of the day, DeMario asks us to reweigh the evidence presented to the ALJ. But that's beyond the scope of our review because substantial evidence supported the ALJ's decision. *Ulman*, 693 F.3d at 714.

DeMario then asserts that the ALJ erroneously disregarded her doctor's comments regarding issues with her balance. But her doctor merely observed that "[n]europathies do affect

balance" and "it is common for patients with neuropathy to have issues with balance." R. 9, Pg. ID 655–56. The doctor offered no opinion on how DeMario's neuropathy specifically affected her balance or ability to work. In fact, the record undermines DeMario's claim that balance issues prevented her from working. According to medical reports, she walked with a normal gait, had normal muscle tone and strength, and had no sensory deficits. What's more, other doctors recommended that she exercise. That suggests both that DeMario is capable of exercise and that exercise might improve her symptoms, as the ALJ pointed out. And even with this contradictory evidence, the ALJ still accounted for her balance issues by noting limitations on her ability to work, including "no climbing of ladders, ropes, or scaffolds" and "avoid[ing] hazards in unprotected heights and operation of dangerous moving machinery." *Id.* at 47. Once again, DeMario wishes for us to step into the shoes of the ALJ and re-evaluate the evidence, but that's not our role. *See Ulman*, 693 F.3d at 714.

Finally, DeMario focuses on her carpal tunnel syndrome, arguing that the ALJ erred in concluding she was capable of frequent—but not constant—hand use. Despite DeMario's reported pain, she maintained full range of motion and muscle strength in her hands. Indeed, her doctors pursued only a conservative treatment plan including wrist braces, over-the-counter medication, and injections, and those injections helped with her symptoms. Additionally, DeMario admitted that she can perform tasks with her hands, like opening a can of soup, using the microwave, cooking meals, washing dishes, folding laundry, and cleaning the bathroom. So, the ALJ's determination that DeMario could engage in frequent hand use falls comfortably within the zone of choice that is free from "interference by the courts." *Blakley*, 581 F.3d at 406 (quotation omitted).

\*       \*       \*

Because substantial evidence supports the ALJ's determination of DeMario's capacity to work, we affirm.