**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0498n.06

No. 14-4140

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jul 13, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ANTHONY REEVES, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | **OPINION** |
| | ) | |
| | ) | |

Before: MOORE and COOK, Circuit Judges, and COHN, District Judge.[*]

**AVERN COHN, District Judge.** This is a social security case. Plaintiff-Appellant Anthony Mark Reeves ("Reeves") challenges the decision of an Administrative Law Judge ("ALJ") of the Social Security Administration ("SSA") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), which became the final decision of Defendant–Appellee Commissioner of Social Security ("Commissioner"). Reeves appealed to the district court, which granted the Commissioner's motion for summary judgment. Reeves appeals, arguing that the ALJ made errors of law and fact that resulted in an incorrect decision to deny benefits. For the reasons that follow, we **AFFIRM** the district court's judgment.

---

[*]The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

No. 14-4140
*Reeves v. Comm'r of Soc. Sec.*

## I. BACKGROUND

### A. Employment History

Reeves was born in 1967 and was forty-four years old at the time of the ALJ's decision. He has an eleventh-grade education. Prior to applying for Social Security benefits, Reeves was employed in a steel mill for six years and worked as a dump truck and fork lift operator for ten years. In addition, he worked part time at a supermarket for approximately ten years until it closed in November of 2007. Reeves has not worked since that time and unsuccessfully sought employment for two years before filing for Social Security benefits.

### B. Relevant Medical History[1]

*1. Treatment Records for Physical Impairments*

In August 2007, Reeves sought treatment for left neck and scapulothoracic pain and ear ringing with Nicholas Finley, M.D. Dr. Finley noted that Reeves had some signs of cervical disc disease, as well as tenderness along his left rotator cuff and trapezius muscle. Dr. Finley prescribed a muscle relaxant, recommended heat and massage treatment, and suggested a steroid injection, which Reeves refused.

Two years later, Reeves saw Paula Sprow, MSN, CRNP, for high blood pressure and neck pain, as well as numbness in his left arm when his neck pain flared. Ms. Sprow found no abnormalities in Reeves's neck and noted that he had a full range of motion. Ms. Sprow recommended a pain reliever for his neck pain, along with stretching exercises and alternating

---

[1] Although the record contains extensive information relating to Reeves's medical history, only those records relevant to the instant appeal are noted here.

heat/ice treatments. She increased Reeves's blood pressure medication and advised him to follow up in three months. (R. 13 at 337, ID 383)

On May 24, 2010, Reeves went to an emergency room complaining of neck pain that radiated down his left arm and numbness that affected his grip. He also reported a restricted range of motion in his left arm. The report noted that Reeves underwent neck surgery in 1990 for a fracture he sustained in a car accident. A CT scan of his cervical spine showed degenerative spondylosis with marginal spurs at multiple levels and disc degeneration with post-surgical changes at the site of the earlier fracture. However, the CT scan revealed no recent evidence of acute fracture, dislocation, disc herniation, or spinal stenosis. Reeves was diagnosed with cervical radiculopathy, prescribed a pain reliever and a soft cervical collar, and advised to follow up with his family doctor and to undergo physical therapy. (R. 13 at 338-45, ID 384-91)

A year later, Reeves saw M. Stalter, M.D., complaining of weakness in his upper left arm and some pain and numbness in the lower extremity. Dr. Stalter observed that Reeves had tenderness along his cervical spine and slightly reduced strength (four out of five) in his left arm. Dr. Stalter noted that this was consistent with cervical radiculopathy and referred Reeves to an orthopedic surgeon, Ashok Biyani, M.D., for consultation and treatment of his neck pain. (R. 13 at 420, ID 466)

At Reeves's appointment with Dr. Biyani, he reviewed Reeves's medical file, including the May 24, 2010, CT scan. Dr. Biyani noted that Reeves displayed tenderness with range of motion deficits in cervical extension, flexion, and rotation. Dr. Biyani determined that Reeves

had degenerative disc disease in his cervical spine and left arm radiculopathy, and recommended

that Reeves start physical therapy. (R. 13 at 409-10, ID 455-56) Reeves did not return to see

Dr. Biyani, nor has he sought physical therapy per Dr. Biyani's recommendation.

*2. Consultative Records for Physical Impairments*

Reeves met with consultative examiner Lamberto Diaz, M.D., for a disability

examination. Dr. Diaz stated that Reeves presented with the "rather interesting syndrome" of

numbness on the left side of the body, which extended periodically to the right hand. Dr. Diaz

further noted that while Reeves claimed to have weakness in his left arm and loss of fine

manipulation, his musculature was well preserved. Dr. Diaz concluded that based on Reeves's

history, he would not be suitable for sedentary work. However, Dr. Diaz also suggested that

Reeves undergo neurological/neurosurgical and psychiatric evaluations to make a final

determination as to whether his symptoms were attributable to malingering, neurological

changes, or neuropathy cause by his alcoholism. (R. 13 at 405-07, ID 451-53)

Reeves additionally underwent consultation by two state agency physicians. In August

2010, Willa Caldwell, M.D., opined that Reeves retained the ability to perform a reduced range

of light work. Dr. Caldwell found that, despite Reeves's impairments, he could lift twenty

pounds occasionally, ten pounds frequently, and stand, sit, and/or walk six hours in an eight hour

day. She also found that Reeves was limited to occasional pushing, pulling, overhead reaching

with his left arm, and climbing ladders, ropes, and scaffolding. However, Dr. Caldwell stated

that Reeves was unlimited in his ability to balance, stoop, kneel, crawl, crouch, climb ramps and

stairs, and did not have any manipulative, visual, communication, or environmental limitations. (R. 13 at 85-87, ID 131-33)

In March 2011, state agency physician Lynne Torello, M.D., reached similar conclusions to those of Dr. Caldwell, with a few additional limitations. Dr. Torello opined that Reeves could not climb ladders, ropes, or scaffolds and could only occasionally balance and crawl. Dr. Torello additionally stated that Reeves was limited in his ability to perform fine and gross manipulation with his left hand, and that he should avoid heights, moderate exposure to dangerous machinery, and concentrated exposure to vibrations. (R. 13 at 114-16, ID 160-62)

### 3. Treatment Records for Mental Impairments

Between December 2010 and November 2011, Reeves sought mental health treatment at Maumee Valley Guidance Center under the care of psychiatrist Enedina Berrones, M.D., and counselor David Brown, P.C.C. Reeves initially sought counseling to help with anger management and binge drinking. During this period, his mental health treatment consisted of counseling and a medication regimen. In January 2011, Mr. Brown diagnosed Reeves with adjustment disorder with mixed anxiety and depressed mood and alcohol abuse, and assessed his Global Assessment Functioning score ("GAF") at 51, indicating "moderate symptoms." Dr. Berrones later updated Reeves's diagnosis to (1) depressive disorder; (2) pain disorder associated with psychological factors and a general medical condition chronic; and (3) alcohol dependence and nicotine dependence. His GAF score was assessed at 51-60, indicating "some

difficulty in functioning." As of November 2011, Reeves's diagnoses and GAF rating remained unchanged. (R. 13 at 431-44, ID 477-90)

### 4. Consultative Records for Mental Impairments

In September 2010, Reeves met with consultative examiner Neil Shamberg, Ph.D., for a disability mental assessment. Dr. Shamberg opined that Reeves was of low-average intelligence and diagnosed him with major depressive disorder, bereavement, anxiety disorder, and nicotine and alcohol dependence. Dr. Shamberg gave Reeves a GAF score of 41, indicating that he has "serious symptoms." Addressing Reeves's work-related mental abilities, Dr. Shamberg opined that Reeves had marked limitations in his ability to relate to others and in his ability to withstand the stress and pressures associated with day-to-day work, as well as moderate limitations in his ability to understand, remember, and follow instructions and in his ability to maintain attention, concentration, persistence, or pace. (R. 13 at 388-93, ID 434-39)

In October 2010, a state agency psychologist Melanie Bergsten, Ph.D., opined that Reeves was moderately limited in his ability to get along with co-workers and interact with the public; accept instructions; respond appropriately to changes in the work setting; and to complete a normal workday. Dr. Bergsten found that Reeves was capable of performing work-related tasks in situations where duties are relatively static and changes can be explained. Dr. Bergsten then considered the opinion of Dr. Shamberg and assigned it only partial weight, stating that it lacked substantial support from the record, which did not indicate more than a moderate degree

of impairment in Reeves's ability to relate to others and tolerate stress. (R. 13 at 100-02, ID 146-48)

Similarly, in April 2011, state agency psychologist John Waddell, Ph.D., issued an assessment virtually identical to that of Dr. Bergsten. He opined that Reeves was moderately limited in his ability to maintain concentration; get along with co-workers and interact with the public; accept instructions; respond appropriately to changes in the work setting; and complete a normal workday. Like Dr. Bergsten, Dr. Waddell assigned Dr. Shamberg's opinion partial weight because it lacked substantial support from the record. (R. 13 at 117-18, ID 163-64)

### C. Procedural History

Reeves applied for disability and social security benefits in 2010, alleging a disability onset date of October 1, 2009, due to neck injury, left knee problems, and prior heart attack. The SSA denied the application, and Reeves requested a hearing before an ALJ.

The ALJ denied Reeves's claims for DIB and SSI. Relevant here, the ALJ found that Reeves retained the residual functional capacity ("RFC") to perform a range of light work.[2] However, he was limited to work that required only occasional overhead reaching with his left arm, occasional handling of objects with his left hand, and occasional fine manipulation with his left hand. In addition, the ALJ stated that Reeves must be allowed to alternate between sitting

---

[2] "Light work" is work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and may include "some pushing and pulling of arm or leg controls." 20 C.F.R. 404.1567(b); 20 C.F.R. 416.967(b).

and standing throughout the workday and that he should be limited to simple, repetitive tasks and only occasional interaction with the public. (Tr. 13 at 19-20, ID 65-66)

In reaching his decision, the ALJ discussed Reeves's medical history and assigned varying degrees of weight to the medical opinions that were presented. Relevant here, the ALJ described the findings of Dr. Biyani, in particular Dr. Biyani's conclusions that Reeves suffered from degenerative disc disease, left arm radiculopathy, and tenderness with a diminished range of motion in the cervical spine. The ALJ also noted that Dr. Biyani recommended physical therapy. Although the ALJ did not assign a specific weight to Dr. Biyani's opinion, he did emphasize that Reeves failed to return to Dr. Biyani after the initial consultation. (Tr. 13 at 21-22, ID 67-68) The ALJ also discussed the findings of the state agency physicians, Drs. Caldwell and Torello, and psychologists, Drs. Bergsten and Waddell. The ALJ stated that these opinions were given great weight because they are consistent with the record as a whole. (Tr. 13 at 25, ID 71)

Following the ALJ's unfavorable decision the appeals council denied Reeves's request for review, rendering the ALJ's decision the final decision of the Commissioner. On June 28, 2013, Reeves filed suit in the United States District Court for the Northern District of Ohio. A magistrate judge issued a Report and Recommendation concluding that the ALJ's decision was supported by substantial evidence and should be affirmed. The district court judge concurred with the magistrate judge's findings and affirmed the Commissioner's decision. This appeal followed.

## II. STANDARD OF REVIEW

On appeal, the court reviews *de novo* a district court's decision regarding Social Security disability benefits, *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005), bearing in mind that the limited inquiry is whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (internal citation and quotation marks omitted).

## III. DISCUSSION

Reeves asserts three errors on appeal. First, he argues that ALJ erred in not giving Dr. Biyani's opinion controlling weight on the issue of his range of motion deficits in cervical extension, flexion, and rotation. Next, Reeves argues that the ALJ's assignment of great weight to the state agency medical and psychological consultants' opinions was vague, internally inconsistent, and illogical. Finally, Reeves argues that the ALJ erred by not incorporating limitations related to his lumbar spine, cervical spine, right hand, and mental health impairments into the RFC assessment. Each claim of error is addressed in turn.

**A. Weight Given to Dr. Biyani's Opinion**

*1. The Treating-Source Rule*

The Social Security Administration defines three types of medical sources: non-examining sources, non-treating (but examining) sources, and treating sources. See 20 C.F.R. § 404.1502; *see also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). A physician qualifies as a treating source if there is an "ongoing treatment relationship" such that the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502; *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

Under the "Treating-Source Rule," the opinions of a claimant's treating physician are generally given more weight than those of non-treating and non-examining physicians. 20 C.F.R. § 404.1527(c)(2). Further, if the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," then an ALJ "will give it controlling weight." *Id.*; *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

When an ALJ does not give the treating source's opinion controlling weight, the ALJ must consider a number of factors in considering how much weight is appropriate. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). These factors include the length of the treatment relationship with the physician, the nature and extent of that relationship, the frequency

of examination, the supportability of the physician's opinion, the consistency of that opinion with the record as a whole, and the specialization of the physician. *Wilson*, 378 F.3d at 544.

Further, the ALJ is procedurally required to give "good reasons" for discounting treating physicians' opinions, which are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4). "However, this requirement only applies to *treating* sources." *Ealy*, 594 F.3d at 514 (citation omitted) (emphasis in original).

### 2. Dr. Biyani's Opinion Is Not Entitled to Controlling Weight

Reeves first argues that the ALJ erred in not giving the opinion of Dr. Biyani, a treating physician, controlling weight on the issue of Reeves's range of motion deficits in cervical extension, flexion, and rotation. For several reasons, this argument is without merit.

To begin, Dr. Biyani's opinion is not entitled to treating-source review. Reeves's medical records show that he saw Dr. Biyani only once. Although Dr. Biyani recommended physical therapy and offered to see Reeves again if his symptoms continued, Reeves neither began physical therapy nor returned to Dr. Biyani for further consultation. (Tr. 13 at 410, ID 456) This does not constitute an "ongoing treatment relationship" under Social Security regulations. *See, e.g.*, *Smith*, 482 F.3d at 876 (quoting 20 C.F.R. § 404.1502) (holding that a physician who examined the claimant only once and completed a single "physical capacity evaluation" was not a treating source).

In addition, Dr. Biyani's report never offered any relevant opinion regarding Reeves's impairments or work-related abilities. In contrast to the state agency physicians, Dr. Biyani merely evaluated Reeves for neck pain and left arm pain, and determined that Reeves had tenderness in his cervical spine, diminished range of motion including flexion, extension, and rotation, and radicular pain in the left arm. (Tr. 13 at 409, ID 455) However, Dr. Biyani made no comment on the extent to which these impairments would limit his ability to work, nor the practical degree to which Reeves's range of motion in his left arm was reduced.

Given Dr. Biyani's limited treatment relationship with Reeves and the limited content of his medical report, the ALJ gave appropriate weight to Dr. Biyani's medical findings. Although Reeves is correct that the ALJ did not assign a particular weight to Dr. Biyani's opinion or determine whether his opinion would be provided controlling weight, the ALJ was not required to do so because Dr. Biyani was not a treating physician. Further, to the extent Dr. Biyani did provide an opinion regarding Reeves's physical symptoms, the ALJ accurately described his findings, for example: degenerative disc changes; good range of motion in his upper extremities; tenderness in the cervical spine; and radicular pain and diminished range of flexion, extension, and rotation in the left arm. (Tr. 13 at 21, ID 67)

Reeves's argument that the ALJ provided "no weight to Dr. Biyani's opinion at all" is therefore without merit. (Appellant Br. at 30) Reeves says that the ALJ erred by failing to include the limitations of rotation, flexion, and extension in the RFC assessment; however, Dr. Biyani's report provided no practical information as to the degree to which Reeves's range of

motion was diminished. To the extent Dr. Biyani's report did provide relevant medical information, the ALJ appropriately weighed and considered this evidence.

**B. Weight Given to State Agency Consultants' Opinions**

Reeves next argues that the ALJ erred in giving controlling weight to the state agency medical consultants' physical assessments (Drs. Caldwell and Torello) and the psychological consultants' mental assessments (Drs. Bergsten and Waddell). This argument, too, is without merit.

In his decision, the ALJ stated that these opinions were given great weight because they are "consistent with the record as a whole." (Tr. 13 at 25, ID 71) Generally, an ALJ is permitted to rely on state agency physician's opinions to the same extent as she may rely on opinions from other sources. 20 C.F.R. § 404.1527. Thus, an ALJ may provide greater weight to a state agency physician's opinion when the physician's finding and rationale are supported by evidence in the record. *Id.*; *see also Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.").

*1. The ALJ Gave Appropriate Weight to the Medical Consultants' Opinions*

With regard to Reeves's physical impairments, the ALJ gave appropriate weight to Dr. Caldwell's and Dr. Torello's opinions because both were supported by the record as a whole. Here, the record repeatedly shows that Reeves suffered from degenerative disc disease, left arm and hand radiculopathy, and pain/tenderness in the cervical spine. Despite these limitations, the

record also indicates that Reeves has good range of motion in the left arm with no evidence of acute fractures, dislocations, disc herniation, or spinal stenosis.

These limitations were reflected in Dr. Caldwell's and Dr. Torello's opinions. Both doctors stated that Reeves should be limited to occasional lifting, pushing, pulling, and reaching overhead with his left arm. In addition, Dr. Torello stated that Reeves had manipulative limitations in his left hand. These limitations, in turn, were incorporated into the ALJ's RFC assessment, which stated that Reeves should be limited to "light work" with some additional restrictions.

Reeves also argues that the ALJ erred by failing to incorporate any balancing, avoidance of hazards, avoidance of vibration, and left arm feeling limitations into the RFC assessment. However, only Dr. Torello described these limitations, which lack substantial support elsewhere in the record. Although the ALJ gave great weight to Dr. Torello's opinion, he was not required to incorporate the entirety of her opinion, especially those findings that are not substantially supported by evidence in the record.

*2. The ALJ Gave Appropriate Weight to the Psychological Consultants' Opinions*

With regard to Reeves's psychological impairments, the RFC assessments by Dr. Bergsten and Dr. Waddell were virtually identical. Reeves argues that the ALJ erred by failing to include any RFC limitation related to contact with fellow workers or supervisors.

In their assessments, both psychologists stated that Reeves is moderately limited in his ability to interact appropriately with the public and is "able to relate to a few familiar others on a

superficial basis." (Tr. 13 at 118, 135, ID 164, 181) In addition, Dr. Shamberg stated that Reeves had marked limitations in his ability to relate to others. The ALJ, in his mental RFC assessment, accounted for these limitations in social interaction by limiting Reeves to "only occasional interaction with the public." (Tr. 13 at 20, ID 66)

Reeves says that the ALJ's RFC assessment is inconsistent with Dr. Bergsten's and Dr. Waddell's opinions. This argument is without merit. The ALJ is charged with assessing a claimant's RFC "based on all of the relevant medical and other evidence" of record. 20 C.F.R. § 416.945(a)(3). Even where an ALJ provides "great weight" to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale. *See, e.g.*, *Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014). Here, the ALJ's mental RFC determination was supported by substantial evidence in the record and is not inconsistent with either of the state agency psychologists' opinions.

### C. The ALJ's RFC Assessment

Finally, Reeves argues that the ALJ failed to incorporate lumbar spine, cervical spine, right hand, and mental health impairments into the RFC assessment. This argument, too, is without merit.

Regarding his physical limitations, Reeves relies primarily on Dr. Diaz's opinion. In Dr. Diaz's range-of-motion testing, he found that Reeves was limited in his dorsolumbar flexion, extension, and right and left lateral flexion. (Tr. 13 at 403, ID 449) He also concluded that

Reeves had deficits in cervical flexion, extension, right and left lateral flexion, and right and left rotation. (Tr. 13 at 402, ID 448) Dr. Diaz also reported that Reeves displayed some grip weakness, diminished flexion and extension, and tremors in the right hand. (Tr. 13 at 406, ID 452) In addition, with respect to Reeves's cervical impairments, he relied on Dr. Biyani's findings described above.

The ALJ's decision, however, only assigned "some weight" to Dr. Diaz's opinion,[3] stating that his conclusion that Reeves would not be suitable for sedentary work was not supported by the totality of the evidence or by his own conclusions. Indeed, Dr. Diaz's own report suggested that Reeves's symptoms might be due to "anxiety/malingering of unclear origin" and recommended further evaluation to determine whether his symptoms were caused by malingering, neurological changes, or neuropathy caused by his alcoholism. In addition, as noted above, Dr. Biyani's findings on Reeves's cervical range of motion provided no information as to the degree to which his range of motion was diminished. Nor did either state agency medical consultant—whose opinions the ALJ provided great weight—conclude that Reeves's cervical range of motion impairments limited his physical capacity to perform work-related activities.

With regard to Reeves's mental impairments, his objections are duplicative of his argument that the ALJ erred in giving great weight to the state agency psychological consultants' opinions. *See* Part III.B.2., *supra*. As explained above, these arguments are without merit.

---

[3] Reeves does not assert that the ALJ's assignment of "some weight" to Dr. Diaz's opinion was an error.

For these reasons, the ALJ appropriately incorporated all of Reeves's impairments that were credibly established and supported by the totality of the evidence. The ALJ's RFC determination is supported by substantial evidence and must be affirmed.

## IV. CONCLUSION

For the above reasons, we **AFFIRM** the district court's judgment upholding the Commissioner of Social Security's denial of disability benefits.