NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0028n.06

No. 17-3570

<table>
<tr>
<td rowspan="12">

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

MELINDA GRISIER,

    Plaintiff-Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant-Appellant.

</td>
<td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td>
<td></td>
</tr>
</table>

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MELINDA GRISIER,

    Plaintiff-Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
NORTHERN DISTRICT OF
OHIO

BEFORE:    ROGERS, McKEAGUE, and WHITE, Circuit Judges.

ROGERS, Circuit Judge.  Melinda Grisier appeals the district court's decision to uphold the Commissioner of Social Security's final decision denying her claim for Disability Insurance Benefits under Title II of the Social Security Act.  Grisier contends that the Commissioner failed to give proper weight to medical source evidence provided by consultative psychological examiner Dr. Neil Shamberg, Ph.D, and Grisier claims that the Commissioner failed to comply with 20 C.F.R § 404.1527(c)(5), because the Commissioner gave undue weight to physiatrist Dr. Larry Kennedy's medical opinion when assessing Grisier's mental limitations.  However, it was reasonable for the Commissioner not to afford Dr. Shamberg's opinion controlling weight because he is not a treating physician and because the ALJ gave "good reasons" for discounting his opinion.  Moreover, the Commissioner did not rely on Dr. Kennedy's opinion to assess

Grisier's mental limitations. The district court therefore properly upheld the Commissioner's decision to deny Grisier's Social Security Disability claim.

Melinda Grisier was born in December 1970. She completed the tenth grade and has worked as a fast food cook, drive-thru clerk, pizza delivery driver, and gas station attendant.

In July 2005, Grisier's treating physician, Dr. Diane Conrad, referred her to Dr. Larry Kennedy, a physiatrist, for evaluation after Grisier suffered an injury while working as a clerk at a drive-thru liquor store. Grisier's chief complaint was lower back pain related to her injury, but Dr. Kennedy also noted that Grisier complained of depression, though she was not receiving counseling and was not taking any kind of medication, and that Grisier reported a history of abuse from her former husband. Based on his evaluation, Dr. Kennedy concluded that "if [Grisier] wanted to get better . . . she could," but Grisier informed Dr. Kennedy that she was seeking disability and had no intention of returning to any work place. Nevertheless, Dr. Kennedy suggested continuing physical therapy, though he stated that "if disability is [Grisier's] goal I don't think physical therapy or any other treatments are going to help her."

An MRI taken days before Dr. Kennedy's evaluation showed that Grisier suffered from degenerative disc disease and mild disc bulging. Following her consultative evaluation with Dr. Kennedy, Grisier did not return to Dr. Conrad until March 2006. Shortly after returning to Dr. Conrad, Grisier underwent a physical therapy evaluation and started treatment, but after her physical therapy treatment in June 2006, there is no evidence in the record of treatment for any impairment until after June 30, 2010, Grisier's date last insured.

On April 10, 2012, Grisier sought outpatient therapy to reduce symptoms of depressive disorder and post-traumatic stress disorder following a March 2012 sexual assault. She told her provider that she was also sexually assaulted at age 15, reported a history of intermittent

depression, and expressed interest in counseling. The therapist conducting the initial session with Grisier diagnosed depressive disorder and PTSD. The therapist assessed Grisier's Global Assessment of Functioning ("GAF") score at 50.[1] Grisier's therapy was terminated on September 10, 2012 because Grisier had not returned for treatment and attempts to contact Grisier had been unsuccessful.

On September 19, 2012, Grisier applied for Disability Insurance Benefits under Title II, alleging disability beginning on December 31, 2007. Grisier alleged that she was disabled due to a combination of physical and mental impairments. In December 2012, the Ohio Division of Disability Determination referred Grisier to clinical psychologist Dr. Neil Shamberg for psychological evaluation relating to her claim for mental disability benefits. Dr. Shamberg completed an eight-page evaluation, and concluded that Grisier "would have very, very significant limitations right now" based on her psychological condition, but his evaluation did not opine on Grisier's condition between December 31, 2007 and June 30, 2010.

Grisier's claim was initially denied on January 17, 2013, and upon reconsideration on April 9, 2013, because she had failed to produce medical records from the relevant period that supported her claim for disability. On July 11, 2014, an Administrative Law Judge (ALJ) held a hearing at which Grisier and a vocational expert both testified. The ALJ concluded that Grisier was not disabled during the relevant period and issued her decision denying Grisier's claim on August 14, 2014.

Grisier appealed to the district court, which held that the ALJ's decision was supported by substantial evidence. The district court rejected Grisier's objections that the ALJ had failed to

---

[1] GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses. *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, at 34 (Fourth Ed., 2000). A GAF score between 41 and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." *Id.*

give proper weight to Dr. Shamberg's consultative psychological opinion, and that the ALJ had erroneously relied on Dr. Kennedy's opinion that "if [Grisier] wanted to get better I think she could" when assessing the impact of Grisier's alleged psychological issues on her daily activities. On appeal, Grisier reasserts that the ALJ improperly weighed Dr. Shamberg's and Dr. Kennedy's opinions. Grisier's arguments are not convincing.

The ALJ denied Grisier's disability claim based on a careful review of the entire record, including medical evidence, opinion evidence, and Grisier's testimony before the ALJ. The ALJ explicitly considered Dr. Shamberg's psychological consultative evaluation from December 21, 2012, and stated that Dr. Shamberg had made a number of notable observations Specifically, Dr. Shamberg diagnosed Grisier with major depressive disorder, PTSD, panic disorder, social phobia, and anxiety disorder, and Dr. Shamberg opined that Grisier would have significant limitations in social interactions; responding to work pressures; maintaining attention and concentration; and understanding, remembering, and carrying out instructions. The ALJ, however, concluded that Dr. Shamberg's opinion should be "granted little weight pursuant to 20 C.F.R § 404.1527" because it was "based on an examination years after the claimant's date last insured," and it was "not supported by medical evidence of record during the relevant time period."

Grisier claims that the ALJ erred in failing to give Dr. Shamberg's opinion sufficiently controlling weight, but the ALJ's decision to afford Dr. Shamberg's opinion "little weight" was proper because Dr. Shamberg does not qualify as a "treating source" under 20 C.F.R § 404.1527 and the ALJ gave good reasons for discounting Shamberg's opinion. The Social Security Administration's regulations "instruct [ALJs] to give the *treating physician's* opinion substantial weight if: (1) it is 'well-supported by medically acceptable clinically and laboratory diagnostic

techniques' and (2) it is 'not inconsistent with the other substantial evidence' in the case record," *Brock v. Comm'r of Soc. Sec.*, 368 Fed. Appx. 622, 624 (6th Cir. 2010) (citing 20 C.F.R § 404.1527) (emphasis added). But Dr. Shamberg is not a "treating source." A treating source is a "medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an *ongoing* treatment relationship with [the claimant]," 20 C.F.R § 404.1527(a)(2) (emphasis added), but Grisier did not have an ongoing treatment relationship with Dr. Shamberg. Grisier saw Dr. Shamberg for a single consultative evaluation and has not established that she saw him "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required" for her medical condition. 20 C.F.R § 404.1527(a)(2). Such one-off evaluations generally do not qualify a medical source as a "treating source." *See, e.g., Reeves v. Comm'r of Soc. Sec.*, 618 Fed. Appx. 267, 273–74 (6th Cir. 2015); *Norris v. Comm'r of Soc. Sec.*, 461 Fed. Appx. 433, 439–40 (6th Cir. 2012); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

Moreover, Grisier was evaluated by Dr. Shamberg based on a referral by the Ohio Division of Disability Determination (DDD), for psychological evaluation relating to her claim for mental disability benefits, and the Commissioner "will not consider an acceptable medical source to be [a] treating source if [the claimant's] relationship with the source is not based on [the claimant's] medical need for treatment or evaluation, but solely on [their] need to obtain a report in support of [the claimant's] claim for disability." 20 C.F.R § 404.1527(a)(2). "In such a case, [the Commissioner] will consider the acceptable medical source to be a non-treating source," 20 C.F.R § 404.1527(a)(2), and a nontreating source's medical opinion is given less weight than a treating source's. *See Id.* at § 404.1527(c)(2). Therefore, Dr. Shamberg's opinion was not entitled to the substantial deference Grisier alleges it should have been afforded.

In any event, the ALJ supplied "good reasons" for discounting Dr. Shamberg's opinion. Regardless of its source, the Commissioner will evaluate every medical opinion it receives. *Id.* at § 404.1527(c). Therefore, while Dr. Shamberg is a non-treating physician—whose opinion is entitled to, "if anything, less deference than the treating physician's opinion," *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)—even if Dr. Shamberg qualified as a "treating source," an ALJ may discount his opinion if the ALJ provides "good reasons." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). Here, the ALJ observed that Dr. Shamberg engaged in a single consultative evaluation. The "[l]ength of the treatment relationship and the frequency of examination" are recognized metrics for weighing medical opinions, and "[g]enerally, the longer a treating source has treated [the claimant] and the more times [the claimant] [has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion." 20 C.F.R § 404.1527(c)(2)(i). Indeed, a single examination and report generally fails to "evince the type of ongoing treatment relationship contemplated by the plain text of the regulation" for affording treating sources' opinions substantial weight. *Smith*, 482 F.3d at 876.

The ALJ also observed that Dr. Shamberg's evaluation was conducted more than two years after Grisier's date last insured, and Dr. Shamberg's 2012 evaluation did not relate his observations regarding Grisier's limitations back to the relevant period between December 31, 2007 and June 30, 2010. Dr. Shamberg conducted his evaluation without the benefit of any medical records from the relevant period, and he explicitly found that Grisier "would have very, very significant limitations *right now*." "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 845 (6th Cir. 2004). Indeed, post-date-last-insured medical evidence generally has little

probative value unless it illuminates the claimant's health before the insurance cutoff date. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Cornette v. Sec'y of Health and Human Servs.*, 869 F.2d 260, 264 n. 6 (6th Cir. 1988); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). But again, Dr. Shamberg's conclusions were limited to Grisier's condition in 2012, and his evaluation does not make any findings regarding Grisier's condition during the relevant period. Grisier argues that her self-reported history of abuse during the relevant period sufficiently ties Dr. Shamberg's 2012 diagnoses back to the relevant period, but this is speculative and unsupported by medical evidence. Moreover, the ALJ's decision explicitly considered that "[d]uring the relevant period, [Grisier] lived with her former husband who was abusive towards her."

Finally, the ALJ had good reason to discount Dr. Shamberg's opinion because it was not supported by any objective medical evidence in the record. Deference to the medical opinions of a treating physician requires that they be "based on sufficient medical data." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). "Such opinions are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). But here, Dr. Shamberg did not conduct his evaluation with the benefit of medical data from the relevant period, and the record presented to the ALJ is devoid of objective medical evidence showing Grisier's mental limitations during the relevant period. Dr. Shamberg acknowledged that his conclusions were based almost entirely on Grisier's self-reports during the 2012 interview, and that he did not conduct any psychological testing. Generally, when a social security disability claimant "simply fail[s] to present any contemporaneous medical evidence of disability from the relevant time

period," the claimant cannot carry their burden of proving their disability for the relevant period. *Strong*, 88 Fed. Appx. at 845–46.

Dr. Shamberg's opinion was also inconsistent with the evidence that was before the ALJ. The ALJ found that Grisier "did not even have any subjective complaints of psychiatrically based symptoms during the relevant time period," and concluded that "all the documented medical evidence, including objective findings and diagnostic test results" was more consistent with a finding that Grisier had retained a residual functional capacity (RFC) to perform light work. An ALJ may give a treating source's opinion "little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *See Morr v. Comm'r of Soc. Sec.*, 616 Fed. Appx. 210, 211 (6th Cir. 2015) (citing *Bogle v. Sullivan*, 998 F.2d 342, 347–48 (6th Cir. 1993)).

Grisier also claims that the Commissioner failed to comply with 20 C.F.R § 404.1527(c)(5), which directs ALJs to consider medical specialty when determining how much weight to afford a medical opinion. Grisier alleges that when the ALJ assessed her mental limitations the ALJ afforded greater weight to Dr. Kennedy's opinion than to Dr. Shamberg's opinion, even though Dr. Kennedy is a physiatrist[2] and Dr. Shamberg is a psychologist[3]. Grisier's claim, however, fails because the ALJ's decision clearly does not rely on Dr. Kennedy's opinion to assess Grisier's mental limitations. In fact, the ALJ discussed Dr. Kennedy's opinion only in the context of Grisier's physical limitations from her degenerative disc disease, and the only opinion the ALJ cited when discussing Grisier's mental health history

---

[2] Physiatry is a "branch of medicine dealing with the treatment of injury, disability, and disease using exercise, massage, mechanical aids, and various other physical methods. . . ." *Physiatry*, OXFORD ENGLISH DICTIONARY (online ed. 2017), http://www.oed.com/view/Entry/242464?redirectedFrom=physiatry#eid.

[3] Psychology is the "scientific study of the nature, functioning, and development of the human mind, including the faculties of reason, emotion, perception, communication, etc. . . ." *Psychology*, OXFORD ENGLISH DICTIONARY (online ed. 2017), http://www.oed.com/view/Entry/153907?redirectedFrom=psychology#eid.

or possible mental limitations was Dr. Shamberg's. Rather than erroneously relying on Dr. Kennedy's evaluation to assess Grisier's mental limitations, the ALJ explicitly stated: "The [RFC] contains no mental work restrictions because the claimant had no mental medically determinable impairment during the relevant period." Thus, the ALJ's conclusion that Grisier did not have mental limitations during the relevant period was founded on Grisier's failure to produce objective medical evidence of a mental impairment during the relevant period, not Dr. Kennedy's evaluation.

The judgment of the district court is affirmed.