NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0174n.06

Case No. 24-5504

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Mar 31, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| ARTHUR WILDS, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant-Appellee. | ) | |
| | ) | O P I N I O N |

Before: THAPAR, NALBANDIAN, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Plaintiff Arthur Wilds applied for disability insurance benefits in 2016 and for supplemental security income in 2020. The Social Security Administration later consolidated his applications, and the administrative law judge hearing his claims determined that Wilds was not disabled before his supplemental security income application date. This left Wilds with a partially favorable ruling, denying him disability insurance benefits but granting him supplemental security income from the date of his application. Wilds sought relief in the district court, arguing with respect to the disability insurance benefits denial, that the decision failed to adequately account for his treating physician's balance opinion in assessing his residual functional capacity. The district court disagreed, finding that substantial evidence supported the decision. Wilds timely appealed. We AFFIRM.

## I.

In 2016, Wilds applied for disability insurance benefits ("DIB") under Title II and part A of Title XVIII of the Social Security Act, 42 U.S.C. §§ 401–34, 1395, claiming a disability onset date of July 23, 2015. After an unfavorable final agency decision, Wilds appealed to the United States District Court for the Eastern District of Kentucky, which remanded his claim to the Social Security Administration ("SSA") for reconsideration of his DIB claim. The SSA consolidated Wilds's remanded claim for DIB with the supplemental security income ("SSI") claim he filed in Spring 2020[1] for a new hearing.

On remand, the Appeals Council vacated the final decision of the SSA and assigned the case to another administrative law judge ("ALJ") with instructions to revisit the treating source opinion of Jessica Pennington, M.D. In particular, the Appeals Council noted that the earlier ALJ had assigned "little weight" to Dr. Pennington's opinion that Wilds "required a cane for all surfaces, including in order to maintain balance," when "[t]he record, however, suggests the claimant had difficulty with balance." (R. 7-9, PageID 1441). Expressly pointing to the earlier ALJ's residual functional capacity ("RFC") finding that Wilds "must use a cane for ambulation for walking on level surfaces, but not for balance," (*id.*), the Appeals Council directed ALJ Jonathan Stanley to "[g]ive further consideration to" Dr. Pennington's February 2017 opinion and to explain the weight ultimately accorded to it, (*id.* at PageID 1442).

After conducting a new hearing, the ALJ issued a partially favorable decision, finding Wilds disabled as of the date he filed his SSI application. The ALJ applied the five-step disability

---

[1] The record alternately identifies Wilds's SSI application date as March 5, 2020, and May 5, 2020. (*Compare* R. 7-8, PageID 1386 *with* R. 7-8, PageID 1369; R. 7-9, PageID 1442). We need not resolve this discrepancy in the record as it is not directly material to the issues Wilds raises on appeal, which concern the denial of Wilds's application for DIB.

analysis to Wilds's claims and found at step one that Wilds had not engaged in substantial gainful activity since July 23, 2015. At step two, the ALJ concluded that Wilds suffered from several severe physical impairments, including degenerative disc disease, degenerative joint disease, bilateral carpal tunnel syndrome, osteoarthritis, chronic pain syndrome, diabetes mellitus, edema, coronary artery disease, hypertension, astigmatism, presbyopia, hyperopia, strabismic amblyopia, extropia, and obesity. At step three, the ALJ found that none of Wilds's impairments or combination of impairments met or medically equaled any of the listed impairments in the Social Security regulations. His RFC assessment, however, differed from the earlier ALJ's decision. ALJ Stanley determined that Wilds had the RFC to perform a limited range of "sedentary work" as follows:

> [H]e can frequently push and pull using the upper extremities; can occasionally push and pull using the lower extremities; can occasionally climb stairs and ramps, but cannot climb ropes, ladders, and scaffolds; *can occasionally balance (with "balancing" defined as maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces)*; can occasionally stoop, kneel, crouch, and crawl; can occasionally reach overhead bilaterally; can frequently handle and finger; can occasionally operate foot controls; *requires use of a handheld assistive device, such as a cane when ambulating distances of more than 50 feet*; must avoid concentrated exposure to extreme cold, humidity, and vibration; cannot operate commercial vehicles; can frequently read computer screens and fine print, and handle small objects; can avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles, but cannot work at unprotected heights or around hazards, such as heavy equipment.

(R. 7-8, PageID 1389) (emphasis added).

In fashioning this RFC, the ALJ relied on a variety of evidence, including examination notes and treatment records from several physicians affiliated with Saint Joseph Hospital, where Wilds received treatment. The ALJ concluded that, while Wilds's medically determinable impairments could cause some of his alleged symptoms, including his inability to ambulate without a cane, the evidence did not support the alleged intensity, persistence, or limiting effects

of the symptoms pertinent to a finding of disability. In reaching this conclusion, the ALJ's decision addressed each of Wilds's impairments and discussed whether the medical evidence supported Wilds's alleged symptoms and limitations. The decision also discussed the weight the ALJ accorded each of Wilds's medical opinions and discussed the rationale for each weight designation.

As relevant here, the ALJ gave great weight to Dr. Pennington's opinions concerning limitations on Wilds's ability to ambulate and balance. Dr. Pennington became Wilds's primary care physician in March 2016. She routinely tracked Wilds's gait and ambulation over the course of her treatment with him, and she prescribed medication to assist Wilds with his uncontrolled diabetes and neuropathy symptoms. In February 2017, Dr. Pennington completed an Assistive Device Medical Source Statement ("Statement"), indicating that she had prescribed Wilds a cane and describing when he needed to use it. The Statement included Dr. Pennington's opinions that Wilds required a cane to maintain balance and that he could walk, at most, fifty feet without his cane. The ALJ explained that he gave great weight to Dr. Pennington's opinion that Wilds "required a cane to use with assistance in ambulation and balancing and that [Wilds] could only walk 50 feet without the assistive device," because the doctor's opinion was consistent with the weight of the medical evidence presented. (R. 7-8, PageID 1393).

At step four, ALJ Stanley determined that Wilds could not perform any past relevant work, but at step five he determined that Wilds could perform other jobs existing in significant numbers in the national economy as of December 20, 2017, because of his age at that time. So, because

Wilds was last insured as of March 30, 2017, he was not disabled while he was insured and was therefore ineligible for DIB.[2]

The Appeals Council denied Wilds's request for review of this decision, so Wilds again sought relief in the district court. Wilds complained that his RFC did not account for Dr. Pennington's opinion that he required a cane to maintain balance, despite the great weight the ALJ said he gave the opinion. Wilds contended that the ALJ further erred by failing to explain why he did not include this specific opinion in creating Wilds's RFC. Rejecting Wilds's arguments, the district court concluded that "the ALJ's RFC finding properly accounts for Dr. Pennington's opinion." (R. 16, PageID 2606). The district court affirmed the ALJ's decision, and Wilds now raises the same issues on appeal.

## II.

We review a district court's decision denying DIB de novo. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013). Our review is, nevertheless, "limited to determining whether [the ALJ's decision] is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); 42 U.S.C. § 405(g). Substantial evidence "requires 'more than a mere scintilla' of evidence, . . . 'mean[ing] only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). Reviewing the record as a whole, we must affirm where the ALJ's decision is supported by substantial evidence, "even if substantial evidence would support the opposite conclusion." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)

---

[2] Because Wilds's age category changed on December 17, 2017, to an individual closely approaching advanced age, the ALJ found that, as of the date of Wilds's SSI application, no jobs existed in significant numbers in the national economy that Wilds could perform. He was therefore disabled as of that date and eligible for SSI.

(quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). However, an "ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Cole v. Astrue*, 661 F.3d 931, 939–40 (6th Cir. 2011) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)).

III.

A.

Wilds's challenge centers on the ALJ's assessment of his RFC at step three. An ALJ's RFC determination reflects "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must assess a claimant's RFC "based on all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3). Wilds argues that inconsistencies between the opinion evidence and the ALJ's assessment of his RFC "make[] it impossible to trace the ALJ's reasoning" for purposes of review. (ECF 14, Appellant's Br. at 14, 17). Specifically, he argues that the RFC does not adequately account for Dr. Pennington's opinion that Wilds needed a cane to maintain balance, despite claiming to give her opinion great weight. Moreover, says Wilds, SSR 96-8p required the ALJ to explain why he excluded this particular opinion. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).[3]

B.

As an initial matter, an ALJ is not required to incorporate the entirety of a medical opinion that has received great weight. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir.

---

[3] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the [SSA]." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

2015). But the ALJ's assessment of medical-source evidence must nonetheless reflect the standards imposed by the SSA. *See Cole*, 661 F.3d at 937. Those standards require the ALJ to "consider and address medical source opinions" in the RFC, and if the RFC conflicts with a medical-source opinion, the ALJ must explain why. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The Commissioner will typically "give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(d)(2) (current version at 20 C.F.R. § 404.1527(c)(2)). Even if an ALJ declines to give a treating physician's opinion controlling weight, a treating physician's opinion is generally still entitled to deference and must be weighed using certain factors—such as how long and how frequently the physician treated the claimant, the nature and extent of the treating relationship, and how well the evidence supports the physician's opinion. *Blakley*, 581 F.3d at 408 (citing SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)); *see also* 20 C.F.R. § 404.1527(c)(2).

IV.

Here, Wilds does not challenge the ALJ's decision to give Dr. Pennington's opinion great, rather than controlling, weight. He instead claims that the ALJ violated the SSA's standards under SSR 96-8p by failing to either include the limitations reflected in Dr. Pennington's balance opinion or explain why he excluded them. We disagree.

Social Security Regulation 96-8p requires an ALJ to "explain why [an] opinion was not adopted" when "the RFC assessment conflicts with an opinion from a medical source." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). So, we first consider whether Wilds's RFC conflicted with Dr. Pennington's opinion. It did not.

Dr. Pennington circled "Yes" in answering the question, "Does the patient require the assistive device in order to maintain balance?" (R. 7-7, PageID 677). But she also noted in response to the question, "How long can the patient walk without the assistive device?" that Wilds could walk "50 feet." (*Id.*). The RFC expressly incorporates Dr. Pennington's opinion that Wilds could ambulate up to fifty feet without his cane. Still, argues Wilds, the RFC does not incorporate Dr. Pennington's opinion that Wilds required an assistive device to maintain balance. And the decision does not explain why the ALJ disregarded that opinion and instead determined that Wilds "can occasionally balance." (R. 7-8, PageID 1389).

The Commissioner counters, and we agree, that the RFC accounted for Dr. Pennington's opinion. Read as a whole, the Statement conveyed that Wilds required a cane, "*including* for purposes of maintaining balance when walking more than 50 feet." (ECF 15, Appellee's Br. at 19 (cleaned up)). In other words, Dr. Pennington's notation that Wilds could walk up to fifty feet seems to qualify her opinion that Wilds required his cane to maintain balance. And the Commissioner says we can infer from the evidence in the record why the ALJ did not incorporate greater balance limitations into the RFC.

Given the generality of Dr. Pennington's circle-indicated opinion that Wilds needed a cane to maintain balance, the RFC's assessment that Wilds "can occasionally balance" does not necessarily reflect a conflict with that opinion. (R. 7-8, PageID 1389). Under the SSA regulations, an assessment of whether "a hand-held assistive device is medically required" would be expected to include a description of "the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Dr. Pennington opined that Wilds needed a cane for all surfaces and to maintain balance and "while engaging in *occasional*

standing/walking," but also stated that Wilds could walk on his own for up to fifty feet without a cane. (R. 7-7, PageID 677) (emphasis added). At first blush, these statements may seem somewhat inconsistent. After all, a person would be expected to balance while walking those fifty feet—or any lesser distance. But there is no reason to assume these discrete parts of the opinion are at odds with one another or with the RFC. And here, harmonizing the statements is not difficult; Wilds "required a cane to use with assistance in ambulation and balancing" during occasional standing and walking and during other activities identified on the form (e.g., while completing activities of daily living and going down stairs). (R. 7-8, PageID 1393). In other words, Wilds could ambulate and balance unassisted sometimes, but he needed his cane for assistance at other times. Because Wilds's RFC must reflect "the most" he can do, 20 C.F.R. § 404.1545(a)(1), it makes sense that the ALJ understood Dr. Pennington's statement to indicate that Wilds could occasionally balance (i.e., at least when walking up to fifty feet) but required a cane when traveling longer distances. If the RFC had credited Dr. Pennington's "yes" to mean that Wilds required a cane for balance at all times, then it would extend Dr. Pennington's stated limitation beyond the parameters reflected in the Statement and would not reflect the most that Wilds could do. Viewed through this lens, the RFC did not conflict with Dr. Pennington's opinion, but rather captured it. So, the ALJ need not have provided any additional explanation.

Wilds's reliance on *Kinney v. Commissioner of Social Security*, No. 23-3889, 2024 WL 2273365 (6th Cir. May 20, 2024), does not change this conclusion. In *Kinney*, we remanded based on an ALJ's RFC finding because the ALJ had failed to explain, in accordance with SSR 96-8p, omission from the RFC of a limitation included in a medical opinion he had ostensibly given persuasive weight. *Id.* at *3. But the claimant in *Kinney* clearly identified the omitted opinion and the SSA did not seem to dispute that the opinion was not incorporated into the RFC. *Id.* at *3–4.

So, we held that "[t]he failure to either incorporate the limitation or explain its omission was an error." *Id.* at *3.

This case is not like *Kinney*. Here, the Commissioner does not concede but rather rejects Wilds's contention that the disputed opinion was not incorporated. And the record supports this view. Because Wilds's RFC reflects the limitations contained in Dr. Pennington's opinion, the ALJ had no obligation under SSR 96-8p to provide further explanation for his reasoning. And, as explained below, substantial evidence supports the ALJ's determination that Wilds could both occasionally balance and ambulate no more than fifty feet without his cane. So, unlike in *Kinney*, we are not foreclosed from finding substantial evidence here because of any failure by the ALJ to follow the SSA's own rules. *Cf. Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016).

Moreover, the ALJ's reading of Dr. Pennington's opinion, as reflected in the RFC, is supported by and consistent with other medical evidence in the record. In evaluating Wilds's symptoms and evidence relating to his degenerative disc disease, osteoarthritis, and chronic pain, the ALJ discussed the opinion of Dr. Craig Cartia, M.D., noting that Wilds had an ambulatory, nonantalgic gait. The ALJ also referenced Wilds's treatment records from Dr. Oliver James II, M.D., which noted that Wilds had "a normal gait and was able to transition from walking, sitting, and standing without difficulty." (R. 7-8, PageID 1391). And the ALJ considered Dr. Amjad Bukhari, M.D.'s observation during an August 2017 patient visit that Wilds "was walking better with the use of a cane." (*Id.*). From this, the ALJ concluded that "[t]hese findings support the [RFC] in that they show that [Wilds] retained . . . the ability to transition between multiple positions" and "ambulate with the assistance of a cane." (*Id.*).

The ALJ also discussed Dr. Pennington's own records indicating that, from March through June 2016, Wilds's "gait and station were within normal limits, and there was no evidence of

muscle weakness or pain." (*Id.* at PageID 1392). In May 2017, Dr. Pennington observed that Wilds's gait had slowed but his blood sugar was improving with medications and treatment. From this, the ALJ concluded that the record evidence did not support Wilds's assertions of lost strength or an abnormal gait. And, when asked at the hearing before the ALJ whether he could "get out and walk," Wilds himself acknowledged that he could walk "maybe 125, 130 feet to the mailbox and back." (*Id.* at PageID 1424).

Wilds highlights a few pieces of medical evidence he claims establish his history of balance issues. But this evidence does not suggest he suffered limitations in balance greater than those incorporated into his RFC. And regardless, we affirm where substantial evidence supports the ALJ's decision, even when there is also substantial evidence to support the opposite conclusion, or we might have decided differently. *Ulman*, 693 F.3d at 714. Here, the medical evidence supports the RFC's assessment that Wilds could occasionally balance and needed a cane to ambulate over fifty feet, notwithstanding any evidence Wilds raises to counter that conclusion. Because "a reasonable mind might accept [this evidence] as adequate to support a conclusion," *Moats*, 42 F.4th at 561 (citation omitted), substantial evidence supports the RFC.

V.

We AFFIRM.